# EXHIBIT A

ORIGINAL

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO
## CIVIL DIVISION

PLAINTIFFS LISTED IN          :
EXHIBIT A                     :
                              :     Case No.    A 1 6 0 0 1 1 0
                              :
                              :     JUDGE
          Plaintiffs,         :
                              :     COMPLAINT FOR
                              :     DECLARATORY JUDGMENT
v.                            :
                              :
WEST CHESTER HOSPITAL, LLC    :     INVOLVES DR. DURRANI
7700 UNIVERSITY DRIVE         :     LITIGATION SO BY ORDER OF
WEST CHESTER, OH 45069        :     JUDGE RUEHLMAN THIS
                              :     SHOULD BE ASSIGNED TO HIM
SERVE: GH&R BUSINESS SVCS., INC. :
511 WALNUT STREET             :
1900 FIFTH THIRD CENTER       :
CINCINNATI, OH 45202          :     **REGULAR MAIL WAIVER**
(Serve via Certified mail)    :
                              :                          
And                           :
                              :
UC HEALTH                     :
SERVE: GH&R BUSINESS SVCS., INC. :
511 WALNUT STREET             :
1900 FIFTH THIRD CENTER       :
CINCINNATI, OH 45202          :     **REGULAR MAIL WAIVER**
(Serve via Certified mail)    :
                              :
And                           :
                              :
UC HEALTH ASSURANCE COMPANY :
SERVE: DAVID SCHWALLIE        :
7700 UNIVERSITY DRIVE         :
WEST CHESTER, OH 45069        :     **REGULAR MAIL WAIVER**
(Serve via Certified mail)    :
                              :
And                           :
                              :
UC HEALTH ALLIANCE COMPANY    :
SERVE: DAVID SCHWALLIE        :
7700 UNIVERSITY DRIVE         :



1

WEST CHESTER, OH 45069     :     **REGULAR MAIL WAIVER**
(Serve via Certified mail)     :

And     :

**ARCH INSURANCE COMPANY**     :
SERVE: CT CORPORATION SYSTEM     :
1300 EAST 9TH STREET     :     **REGULAR MAIL WAIVER**
CLEVELAND, OH 44114     :

And     :

**DARWIN NATIONAL INSURANCE**     :
**COMPANY**     :
SERVE: CT CORPORATION SYSTEM     :     **REGULAR MAIL WAIVER**
1300 EAST 9TH STREET     :
CLEVELAND, OH 44114     :

And     :

**NATIONAL UNION FIRE**     :
**INSURANCE**     :
SERVE: CT CORPORATION SYSTEM     :     **REGULAR MAIL WAIVER**
1300 EAST 9TH STREET     :
CLEVELAND, OH 44114     :

And     :

**AXIS INSURANCE COMPANY**     :
SERVE: CT CORPORATION SYSTEM     :     **REGULAR MAIL WAIVER**
1300 EAST 9TH STREET     :
CLEVELAND, OH 44114     :

Plaintiffs (**Exhibit A**) states for their Complaint for Declaratory Judgment against the Defendants as follows. Plaintiffs are patients of Dr. Atiq Durrani who performed surgeries from 2009 through 2013 at West Chester Hospital/UC Health.

### PARTIES, JURISDICTION AND VENUE

1. At all times relevant, West Chester Hospital, LLC ("West Chester Hospital") was a limited liability company authorized to transact business and perform medical services in the

State of Ohio and operating under the trade name West Chester Hospital.

2.     At all times relevant, Defendant UC Health Inc., was a duly licensed corporation which included, owned, operated and/or managed multiple hospitals including, but not limited to West Chester Hospital, and which shared certain services, profits, and liabilities of hospitals including West Chester.

3.     At all times relevant herein, West Chester Medical Center, Inc., aka West Chester Hospital held itself out to the public, and specifically to Plaintiffs, as a hospital providing competent and qualified medical and nursing services, care and treatment by and through its physicians, physicians in training, residents, nurses, agents, ostensible agents, servants and/or employees.

4.     UC Health is the corporate parent, owner and operator of West Chester Hospital, LLC.

5.     UC Health is the corporate parent, owner and operator of West Chester Hospital, LLC. UC Health is located in Hamilton County making Hamilton County.

6.     UC Health Assurance Company is an insurance company insuring Defendant West Chester/UC Health during a time frame covering Plaintiffs.

7.     UC Health Alliance Company is an insurance company insuring Defendant West Chester/UC Health during a time frame covering Plaintiffs.

8.     Arch Insurance Company is an insurance company insuring Defendant West Chester/UC Health during a time frame covering Plaintiffs.

9.     Darwin National Insurance Company is an insurance company insuring Defendant West Chester/UC Health during a time frame covering Plaintiffs.

10.    National Union Fire Insurance is an insurance company insuring Defendant West Chester/UC Health during a time frame covering Plaintiffs.

11.  Axis Insurance Company is an insurance company insuring Defendant West Chester/UC Health during a time frame covering Plaintiffs.

12.  **Exhibit B** is Plaintiffs' analysis of all the coverage of Defendants provided by a national and local insurance expert.

13.  **Exhibit C** is correspondence regarding the coverage with West Chester counsel proving that West Chester and Plaintiffs disagree on what the coverage for Plaintiffs.  West Chester maintains it is $40 million and Plaintiffs over $110 million.

14.  The Court is vested with jurisdiction of this matter as a declaratory judgment.

15.  Venue of this matter is proper since UC Health is located in Hamilton County.

16.  Civil lawsuits have been filed and will be filed in various courts, by the Plaintiffs, i.e., the individuals identified in **Exhibit A** for lack of informed consent, negligence, negligent supervision, fraud, intentional infliction of emotional distress, loss of consortium, violation of the Safe Medical Devices Act, violation of the Ohio Consumer Sales Protection Act.

17.  An actual justiciable controversy has arisen as to whether these policies provide coverage to West Chester/UC Health for the Underlying Lawsuits.

WHEREFORE, Plaintiffs respectfully demands the following relief:

1. A Declaratory Judgment determining the coverage of West Chester/UC Health on Plaintiffs claims;

2. Costs;

3. Reasonable attorney fees; and

4. Any other relief the Court deems equitable and just.

Respectfully Submitted,

\s\Matthew Hammer
Matthew Hammer (0092483)
*Attorney for Plaintiff*
5247 Madison Pike
Independence, KY 41051
Phone: 513-729-1999
Fax: 513-381-4084
mhammer@ericdeters.com

## JURY DEMAND

Plaintiffs make a demand for a jury under all claims.

\s\Matthew Hammer
Matthew Hammer (0092483)

# EXHIBIT A



**EXHIBIT A**

| |
|---|
| 1.  Aaron, Frieda |
| 2.  Adams, Patricia |
| 3.  Allen, Katrina |
| 4.  Allen, Sherri Lynn |
| 5.  Applegate, Rebecca |
| 6.  Arnold, George |
| 7.  Ashcraft, Diana |
| 8.  Atkins, Brian |
| 9.  Atwell, Jonathan |
| 10. Atwood, Christopher |
| 11. Augst, Thomas |
| 12. Bachman, Gayle |
| 13. Bailey, Caiden |
| 14. Baker, Nicole |
| 15. Ballinger, Jennifer |
| 16. Barth, Thomas |
| 17. Bartlett, Cindy |
| 18. Batsche, Laura |
| 19. Battista, Nicholas |
| 20. Baumgardner, Joseph |
| 21. Bayliss, Louise |
| 22. Bechtold, Phyllis |
| 23. Beck, Judy |
| 24. Begley, Nancy |
| 25. Beil, Cathy |
| 26. Beil, Terry |
| 27. Bender, Mackenzie |
| 28. Benton, William |
| 29. Bess, Denise |
| 30. Beyer, Leona |
| 31. Bishop, Edythe |
| 32. Boggs, Barbara |
| 33. Boggs, Kaitlyn |
| 34. Boland, Nancy |
| 35. Bookman, Jennifer |
| 36. Boone, Patricia |
| 37. Borchers, Deena |
| 38. Botner, Gerald |
| 39. Bowling, Arletta |
| 40. Bowman, Nancy |
| 41. Brackett, Penny |
| 42. Bradshaw, Latoya |
| 43. Brady, Rebekah |
| 44. Brashear, Christina |
| 45. Braucher, Melissa |

**EXHIBIT A**

| |
|---|
| 46. Bray, Lindsey |
| 47. Brewer, Randall |
| 48. Brice, Sharon |
| 49. Britten, Carrie |
| 50. Brorein, Eileen |
| 51. Brown, Dawn |
| 52. Brown, James |
| 53. Brown, Tara |
| 54. Bruce, Patricia |
| 55. Brunner, Jonathan |
| 56. Buschur, Vicki |
| 57. Bushelman, Kathleen |
| 58. Buskirk, Annette |
| 59. Byar, Michelle |
| 60. Callahan, Doug |
| 61. Campbell, Robert |
| 62. Carr, Andrew |
| 63. Chuhn, Bunnavuth |
| 64. Chisman, Tonya |
| 65. Cinquina, Sherri |
| 66. Clark, Chris |
| 67. Cochran, Jessica |
| 68. Compo, Elizabeth |
| 69. Conger, David |
| 70. Conley, Brenda |
| 71. Conley, Dana |
| 72. Conley, Lisa |
| 73. Cook, Michael |
| 74. Coots, Gary |
| 75. Couch, Jackie |
| 76. Crail, Michael |
| 77. Crowe, Joi |
| 78. Dabney, William |
| 79. Dale, Tammy |
| 80. Davis, Joseph |
| 81. Davis, Nellie |
| 82. Dawson, Ralph |
| 83. Deaton, Ollie |
| 84. Deck, Damon |
| 85. Dennis, Sandra |
| 86. Densler, Robert |
| 87. Dority, Kristine |
| 88. Dotson, Carolyn |
| 89. Drafts, Doug |
| 90. Dugan, Patrick |

**EXHIBIT A**

| | |
|---|---|
| 91. | Dugger, Billy |
| 92. | Dunklin, Dawn |
| 93. | Earls, Darrell |
| 94. | Elfers, Kevin |
| 95. | Ellington, Connie |
| 96. | Ellington, Robert |
| 97. | Engle, Kelly |
| 98. | Errgang, Brenda |
| 99. | Fait, Arlene |
| 100. | Falkner, Tony |
| 101. | Favaron, Neil |
| 102. | Ford, Francine |
| 103. | Fossett, Lennie |
| 104. | Franks, Amanda |
| 105. | Frazier, Joann |
| 106. | Gardner, Judith |
| 107. | Geralds, Christine |
| 108. | Gilbert, Erma |
| 109. | Goldstein, Christine |
| 110. | Good, Donna |
| 111. | Grabow, Maurice |
| 112. | Greelish, Erin |
| 113. | Greene, Gloria |
| 114. | Gregory, Robbie |
| 115. | Griffin, Susan |
| 116. | Grimm, Jenny |
| 117. | Habermehl, Melissa |
| 118. | Haggard, Lenora |
| 119. | Haley, Lynn |
| 120. | Hall, Lisa |
| 121. | Hall, Ruhama |
| 122. | Hamilton, Dorothy |
| 123. | Hamilton, Samantha |
| 124. | Hammons, Courtney |
| 125. | Hannon, Timothy |
| 126. | Hartness, Kevin |
| 127. | Hastings, Jessica |
| 128. | Hatfield, Wayne |
| 129. | Hayes, Douglas |
| 130. | Hayes, William |
| 131. | Heffner, Heather |
| 132. | Helton, Denise |
| 133. | Helton, Evelyn |
| 134. | Henderson, Debra |
| 135. | Hennessy, Kelly |

**EXHIBIT A**

| | |
|---|---|
| 136. | Hensley, Ryan |
| 137. | Hickey, Jennifer |
| 138. | Higginbothan, Karen |
| 139. | Hillard, Michael |
| 140. | Hitchcock, Dirk |
| 141. | Hoffman, Celeste |
| 142. | Hon, Loretta |
| 143. | Hortman, Chelsea |
| 144. | Houghton, Robert |
| 145. | Hounchell, Ricky |
| 146. | Hounchell, Rita |
| 147. | Howell, Kathryn |
| 148. | Hughes, Lois |
| 149. | Hughes, Tammy |
| 150. | Hursong, Carolyn |
| 151. | Huser, Connie |
| 152. | Hutton, Martha |
| 153. | Hyde, Irene |
| 154. | Hyde, Jeffrey |
| 155. | Ieraci, Elsa |
| 156. | Jenkins, Kimberly |
| 157. | Jobe, Stephanie |
| 158. | Johnson, Chelsea |
| 159. | Johnson, Karen |
| 160. | Johnson, Roger |
| 161. | Jones, Joan |
| 162. | Jones, Rachel |
| 163. | Judkins, Jacqueline |
| 164. | Judkins, Phyllis |
| 165. | Juergens, Sarah |
| 166. | Kauffman, Katelyn |
| 167. | Kibler, Martha |
| 168. | Kidd, Deborah |
| 169. | Kidd, Sherry |
| 170. | King, Charlotte |
| 171. | Koch, Amanda |
| 172. | Koehler, Shannon |
| 173. | Kopp, Valarie |
| 174. | Krabacher, Sheila |
| 175. | Kranbuhl-McKee, Laura |
| 176. | Krech, Larry |
| 177. | Lainhart, Natasha |
| 178. | Leger, Karen |
| 179. | Lemmel, Sandra |
| 180. | Levan, Ailene |

## EXHIBIT A

| 181. | Little, Tammie |
|------|----------------|
| 182. | Lovette, Tamala |
| 183. | Mahlenkamp, Kenneth |
| 184. | Mains, Rhonda |
| 185. | Mains, Shirley |
| 186. | Mains, Vicky |
| 187. | Marksberry, Paul |
| 188. | Marshall, Timothy |
| 189. | Martin, Julie |
| 190. | Masters, Robert |
| 191. | Mathews, Traci |
| 192. | Mayer, Kimberly |
| 193. | Mayfield, Derek |
| 194. | McCain, James |
| 195. | McCall, Jenna |
| 196. | McCann, Heather |
| 197. | McCauley, Hiram |
| 198. | McClendon, Kyra |
| 199. | McClure, Jeff |
| 200. | McDonald, Marcella |
| 201. | McKinney, Candi |
| 202. | McLaughlin, Jeskia |
| 203. | McMillen, Teresa |
| 204. | McMurren, Mark |
| 205. | McNeal, Kerry |
| 206. | McQueary, Tonia |
| 207. | Meadows, Tiffany |
| 208. | Metcalf, Randall |
| 209. | Meyer, Diane |
| 210. | Meyers, Thomas |
| 211. | Middendorf, Lyndsey |
| 212. | Miller, Karen |
| 213. | Miller, Ryan |
| 214. | Moffitt, Vera |
| 215. | Moore, Billie |
| 216. | Moore, Debbie |
| 217. | Moore, Donald |
| 218. | Moore, Robert |
| 219. | Moore, Tim |
| 220. | Moore, William |
| 221. | Mounce, Robert |
| 222. | Nafe, Joetta |
| 223. | Neal, Tonya |
| 224. | Neu, Gary |
| 225. | Newman, Marjorie |

**EXHIBIT A**

| 226. | Nichols, Teresa |
| 227. | Nyemba, Ruvimbo |
| 228. | Oberlander, Wendy |
| 229. | Osborn, Timothy |
| 230. | Owens, Dannie Mae |
| 231. | Payne, Haley |
| 232. | Peddicord, Jeff |
| 233. | Pelfrey, Duane |
| 234. | Pfetsch, Kenneth |
| 235. | Phillips, Clarence |
| 236. | Pickett, Heather |
| 237. | Poff, Jeffrey |
| 238. | Prater, Katie |
| 239. | Pridemore, Lawrence |
| 240. | Pritchard, Sharon |
| 241. | Puckett-Morrissette, Sherri |
| 242. | Pummell, Carol |
| 243. | Pumpelly, James |
| 244. | Quinn, Marcia |
| 245. | Radeke, Sandra |
| 246. | Radenheimer, Margaret |
| 247. | Ray, Todd |
| 248. | Reed, Danielle |
| 249. | Reeder, Jane |
| 250. | Reeves, Valerie |
| 251. | Reifenberger, Holly |
| 252. | Remley, Jeffrey |
| 253. | Reynolds, Derrill |
| 254. | Reynolds, Harry |
| 255. | Reynolds, Kent |
| 256. | Reynolds, Lisa |
| 257. | Richardson, John |
| 258. | Riley, Jason |
| 259. | Rister, Donna |
| 260. | Robbinson-Woods, Theresa |
| 261. | Robinson, Kelly |
| 262. | Rodriguez, Debbie |
| 263. | Romer, Jason |
| 264. | Rose, Dorothy |
| 265. | Rosebery, Faye |
| 266. | Ross, Carol |
| 267. | Rowley, Ronald |
| 268. | Rueve, Kathryn |
| 269. | Runtz, Robert |
| 270. | Sand, Mike |

## EXHIBIT A

| 271. | Sander, Michael |
|------|-----------------|
| 272. | Scheper, Chris |
| 273. | Schiller, Robin |
| 274. | Schimmel, Joseph |
| 275. | Schock, Susan |
| 276. | Schultz, Andrew |
| 277. | Schulze, Timothy |
| 278. | Schuster, Ronald |
| 279. | Scott, Delores |
| 280. | Scott, Rhonda |
| 281. | Setters, Dana |
| 282. | Shafer, Glenna |
| 283. | Shell, Brenda |
| 284. | Shempert, David |
| 285. | Sizemore, Michelle |
| 286. | Smith, David |
| 287. | Snider, David |
| 288. | Spangenberg, Sherrie |
| 289. | Spivy, Billy |
| 290. | Stallings, Eddie |
| 291. | Stanfield, Richard |
| 292. | Stephens, Michelle |
| 293. | Stephenson, Patrick |
| 294. | Stephenson, Tempie |
| 295. | Sterling, Darlene |
| 296. | Taylor, Edna |
| 297. | Taylor, Karen |
| 298. | Telscher, Kathleen |
| 299. | Thien, Brian |
| 300. | Thiessen, Edward |
| 301. | Thomas, Adrienne |
| 302. | Underwood, Connie |
| 303. | Underwood, Kimberly |
| 304. | Vance, Jordan |
| 305. | Walls, Katherine |
| 306. | Walsh, Tracey |
| 307. | Walters, Michelle |
| 308. | Ward, Linda Kallmeyer |
| 309. | Watkins, Michael |
| 310. | Waxler, Elaine |
| 311. | Weisman, Kirstin |
| 312. | Wesley, Regina |
| 313. | Whalen, Timothy |
| 314. | Whalen, Violet |
| 315. | Wheeler, Lonnie |

7

**EXHIBIT A**

| | | |
|---|---|---|
| 316. | White, Sophia | |
| 317. | Wilder, Tamathy | |
| 318. | Wilder, Troy | |
| 319. | Williams, Benjamin | |
| 320. | Williams, Kelly | |
| 321. | Willoughby, Patrick | |
| 322. | Wilson, Carol | |
| 323. | Wilson, Jetton | |
| 324. | Wilson, Paul | |
| 325. | Wilson, Paula | |
| 326. | Wilson, Robert | |
| 327. | Wilson, Terry | |
| 328. | Wilson, Vicky | |
| 329. | Wingert, Dawn | |
| 330. | Wittmeyer, Priscilla | |
| 331. | Wolder, William | |
| 332. | Wolsing, Billy | |
| 333. | Wooten, Carla | |
| 334. | Work, Amber | |
| 335. | Worley, Deborah | |
| 336. | Wright, Leah | |
| 337. | Yeakle, Veronica | |
| 338. | Young, Joann | |
| 339. | Young, Judy | |
| 340. | Young, Keith | |
| 341. | Zachry, Corinne | |

# EXHIBIT B



## Exhibit 5

We received policies on November 26, 2013 from a formal written discovery request.

There was no verification.

The policies came with this cover letter by counsel.

We had requested all policies for all time frames.

## Exhibit 10

After our expert reviewed what was previously sent and we sent another letter to counsel, we received a letter from counsel with more policies covered from our prior formal request. This was sent February 24, 2015.

## Request For Deposition on Coverage

We have prior written denials of our request to depose someone on coverage. Our request was granted only in the defense's desire to continue the LKM trial and hold this mediation in lieu of the trial.

## David Schwallie Deposition

We pull the following pages: 41-52; 57, 59, 60, 62.

We place the insurance policies in the order Mr. Schwallie places them for coverage. He acknowledges coverage under the policies he references in this order:

**Exhibit 12-** **UC Health Assurance Company**
July 1, 2012 to July 1, 2013

$5,686,359 Advanced Premium

$5,000,000/$20,000,000

Claims Reporting:

Endorsement #5
Mr. Gary Harris
UC Health
(He is retired.)

Mr. Schwallie on pages 46-47 also admits there could be coverage under general liability.

$5,000,000/$20,000,000

**Exhibit 11-**    **UC Health Assurance Company**
July 1, 2012 to July 1, 2013

This policy is called;

Healthcare Excess Liability Policy

$35,000,000

**Exhibit 7-**    **Darwin**
June 30, 2012 to June 30, 2013

Excess Insurance Policy

$10,000,000

**Exhibit 6-**    **Arch**
June 30, 2012 to June 30, 2013

Excess Insurance Policy

$10,000,000

(They reference as underlying excess the Darwin policy Exhibit 7)

**Exhibit 9-**    **Axis**
June 30, 2012 to June 30, 2013

$15,000,000

(They reference as underlying the Darwin Exhibit 7 and Arch Exhibit 6)

Total Policy Coverage Exhibit 12, 11, 7, 6 and 9 equal $90,000,000
(Not including the $20,000,000 in General Liability. This is all coverage 2012-2013 only).

A denial letter was produced for the Chartis (AIG policy).

There are no denial letters for Exhibits 12, 11, 7, 6 and 9.

On page 41 of David Schwallie's deposition, he says he's not aware of UC Health Alliance Company (Exhibit 11), but UC Health Assurance Company is a "captive insurer owned by UC Health."

(*Captive insurance is self-insurance)

On page 42, he states UC Health owns UC Health Assurance Company.

On page 42, we spell out all our claims. He admits all would be covered except punitive damages.

On page 43, he states Exhibit 11 is excess coverage and covers our claims.

On page 44-45, he states Exhibit 12, UC Health Assurance is primary and covers our claims.

On page 46 and 47, he admits there could be coverage also under General Liability.

This would add $20,000,000 to the $90,000,000 total.

On page 49, he states claims have been made under all these policies.

On page 50 to 51, he admits there would be from 2009-2015 other policies which could cover the Board and Officers. (Again, we have asked for this long ago and repeatedly in formal discovery.)

On page 51-52, he admits there are letters and emails back and forth with the carriers.

We requested all this in formal discovery. It has not been produced.

On page 52, he states the representative for UC Health Assurance Company would be Fernando Beckles. We would like to talk to him.

On page 57, he admits Exhibit 11 and 12 provide coverage.

On page 59, he admits there are policies we don't have.

On page 60, he denies umbrella policy.

On page 60, he denies a self-insurance fund. (Owning the policy is a form of self-insurance).

On page 60, he admits 2014 policies have not been produced.

On page 62, he puts the policies in order of coverage: Exhibit 12, 11, 7, 6 and 9.

### More General Comments

1. We have an obligation to fully investigate insurance coverage. However, it is not a definitive issue. It is more of an issue for the defense than us. We will not be negotiating the value of our cases based on coverage. We believe the defense is attempting to feign $40,000,000 million in coverage to set value. We will not accept that proposition whether there is or not $40,000,000 in coverage.

2. How could the first case filed in 2011 and re-filed in 2013 be submitted as a batch clause claim when it was the first and isolated case without any idea there would be a "batch of claims?"

3. The 2009-2010 Policy is titled: Health Alliance Assurance Company.
   The 2012-2013 Policy it titled: UC Health Assurance Company

   The former- $9,722,869 advanced premium.

   The later- $5,656,353 advanced premium.

   Claims are to be reported to former:
   Mr. Gary Harris
   Health Alliance of Greater Cincinnati
   3200 Burnett Avenue
   Cincinnati, OH

   Later:
   Mr. Gary Harris
   UC Health

   These are obvious self-insurance policies.

   Where are the notices to and from Mr. Harris?

4. There has been no certification/verification of coverage.

5. They continue to refuse to outline in detail in writing their position on coverage.

6. There is a 2008/2009- Health Alliance Insurance Company Policies Same as UC Health Assurance.

7. Same 2009/2010- called Health Alliance Insurance Company.

8. We still don't have 2010/2011.

9. It is common practice to have coverage above and beyond a self-insurance fund. They do—see Exhibits 7, 6 and 9.

10. Walt was quick to exclaim there is not third party bad faith in Ohio.

## Sarah Jones

| | |
|---|---|
| **From:** | Sarah Jones |
| **Sent:** | Wednesday, February 11, 2015 11:17 AM |
| **To:** | 'whaggerty@fbtlaw.com'; 'kcarroll@rendigs.com'; jhines@rendigs.com; marilena.walters@dinsmore.com |
| **Cc:** | Matt Hammer; 'bendfarm1@gmail.com'; 'robertawinterjr@gmail.com'; Eric Deters; Erica Deters |
| **Subject:** | Insurance Coverage |

From: Matthew Hammer

We have retained Paul Burkett from Reno, Nevada as an expert/consultant on insurance coverage issues. We sent him the policy that Walt gave us. Here is his response:

**1. They did not forward any copies of UC Health's Commercial General Liability Coverage Forms which provide coverage for the following hospital exposures.**

### a. Premises and Operations

Premises liability arises out of injury and damage caused by conditions that exist in and around the insured's premises. Retail stores and other businesses whose clients and customers come to the place of business itself have a major premises liability exposure, as do landlords. The operations exposure refers to liability for injury or damage caused directly by the insured's business operations while those operations are taking place. This could be from operations conducted on the insured's own premises (injury to a customer shopping in a store, for example) or at another location where the insured's business activities are performed (an accident at a construction site, for example). Premises liability and liability from the insured's operations are associated as loss exposures because the injury or damage out of which they arise usually occurs at an easily specified moment in time and usually in close proximity to (or in the presence of) the insured.

### b. Products and Completed Operations

Both of these loss exposures usually involve injury or damage that is remote in time and space from the insured. Injury caused by the insured's product (goods that the insured has either made or sold) can occur virtually anywhere in the world and years after the product's manufacture or sale. The insured's completed operations refers to work (including construction work) that has been finished, turned over to the purchaser or client, and/or put to its intended use. Obviously, injury or damage arising out of a completed operation (as opposed to operations in progress) can also occur sometime after the insured's business relationship with the claimant has ended.

### c. Contractual Liability

Contractual liability exposure involves the insured's agreement in a contract to take onto itself certain legal liabilities. Some of these liabilities, such as penalties for not performing the contracted obligations satisfactorily, are not a proper subject for general liability insurance and may not even involve injury or damage of the kinds insured under the policy. But other contractually assumed liability and especially the agreement to assume another person's or organization's own tort liability for injury or damage to a third party is an insurable contractual liability exposure.

1

d. **Independent Contractors**

When a person or organization hires a contractor to perform work for it, it may expose itself to liability for injury or damage caused by the contractor to third parties in the course of the work. This liability may arise out of a number of legal theories, from strict liability imposed in connection with exceptionally hazardous work (such as demolition) to charges of negligence in the choice of contractor to do the work. General liability policies will respond to charges of liability brought against an insured for covered injury or damage caused by the insured's contractor.

2. **They did not forward any copy of the Hospital Professional Liability Policy that covers corporate liabilities, statutory liabilities, vicarious liability, agency liability, and negligence related exposures from operating a hospital.**

3. **They did not forward any excess liability coverage forms that are excess of the Commercial General Liability Policy and the Hospital Professional Liability Policy. They should exist to provide proper coverage limits required by statue.**

4. **They also did not produce the Directors and Officers Policy and the Excess Liability policies over these coverages.**

5. There should be UC Health System Commercial General Liability Coverage Policies and Hospital Professional Liability Policies for these entities. These policies may provide coverage for: (1) the failure to hire and supervise qualified medical personnel to provide oversight to Dr. Durrani; (2) the failure Develop appropriate policies and procedures to review repeat or unwarranted surgeries by a credentialed and peer reviewed surgeon allowed access to the hospital; (3) the inability to provide oversight to contracted medical service providers like Dr. Durrani (respondent superior); and (4) failure to supervise the agency liability created by Dr. Durrani under the doctrine of apparent authority through the failure to monitor and/or observe is excess amount of surgeries as compared to other surgeons.

6. The National Union Directors and Officer Policy dependent upon the allegations in your original or supplemental complaint may have put UC Health on notice about the possibility of no coverage through a Reservation of Rights letter. You should get a copy of the reservation of right letter. It may provide some insight into how the D&O carrier views your case. I believe there maybe coverage under the D&O for establishing regulatory compliance of the hospital for in depth peer review and oversight of outside doctor having access to hospital facilities. The hospital board I responsible for establishing those statutory procedure and periodically auditing for compliance. This is a management liability coverage form and we need to focus on board failures which included the risk manager failing in his or her responsibility to implement Board policies and procedures.

You recently claimed in formal discovery answers that you have produced everything that we requested. This is not true. We requested all coverage.

University Hospital     Policy #1

UC Health Alliance Company

Claims Made Policy     Policy#D070112A

Policy covers:  Professional & General Liability

Policy Period:    7-1-2012 to 7-1-2013

Policy limits:

Professional Liability     5 mill occurrence     20 mill aggregate

General Liability     1 mill occurrence     2 mill  aggregate

*** See page 24 for list of locations, shows retro date for West Chester 10-1-2010 ****


REQUEST?

D & O policy from 7-1-2010 to current

Extended Reporting Period Dates

This policy for years 7-1-2010 to 7-1-2012

$20 million

University Hospital       Policy #2

UC Health Alliance Company

Claims Made Policy        Policy#070112

Policy covers:  Professional & General Liability   (follow form policy)

Policy Period:     7-1-2012 to 7-1-2013

Policy limits:

35 mill occurrence    35 mill aggregate   PER POLICY YEAR

Retro date: 5-11-2009

Request

Extended Reporting Period Dates

Request policies back to 7-1-2008

Ask if  D&O coverage is included in this policy.

$ 35,000,000

University Hospital        Policy #3

Arch Insurance Company

Excess Policy

Claims Made Policy        Policy#D0X0022293-05

Policy Period:    6-30-2012 to 6-30-2013

Policy limits: 10,000,000 PER YEAR

---

Request

Retro date and all policies back to Retro date

Extended Reporting Period Dates

What Policy covers: D&O, General Liability, Professional Liability

$10 Million

University Hospital        Policy #4

Darwin National Insurance Company

Claims Made Policy        Policy#0304-7444

Policy covers:  Professional & General Liability   (follow form policy)

Policy Period:     6-30-2012 to 6-30-2013

Policy limits: 10,000,000 PER YEAR

Request:

Retro date and all policies back to that date

Extended Reporting Period Dates

What does policy cover, D&O, Professional Liability, General Liability

$10. Million

University Hospital     Policy #5

National Union Fire Insurance

Claims Made Policy ** WORLD WIDE COVERAGE** If all other policies follow form that makes them all WORLD WIDE

Policy#02-420-77-50

Policy covers:  Professional & General Liability   (follow form policy)

Policy Period:     6-30-2012 to 6-30-2013

Policy limits:  15,000,000  PER YEAR

Retro date:  6-30-2007

Request:

All policies back to 6-30-2000

Policy states this policy replaces policy# 02-217-83-89, request this policy and all prior back to 6-30-2006

Request related D&O policies

Ask if this policy covers D&O, Professional Liability & General Liability.

Request Extended Reported Period date.

#15 million

University Hospital     Policy #6

Axis Insurance Company

Claims Made Policy        Policy#MCN733666/01/2012

Policy Period:    6-30-2012 to 6-30-2013

Policy limits: 15,000,000 PER POLICY YEAR

Retro date: 4-22-2007

Request?

All policies back to 4-22-2007

Ask if this policy covers D&O, Professional Liability & General Liability.

Extended Reporting Period Date

$15 Million

Total UC Policies
$105 Million
plus

# EXHIBIT C





# DETERS LAW ⚖ OFFICE

Main Office
5247 Madison Pike
Independence, KY 41051
859.363.1900 • Fax: 859.363.1444

Cincinnati
19 Broadcast Plaza
635 West 7th Street, Suite 401
Cincinnati, OH 45203
513.729.1999 • Fax: 513.381.4084

*Reply To:*
December 22, 2015

Hon. Walter Haggerty
Frost, Brown, Todd, LLC
3300 Great American Tower
301 E. Fourth Street
Cincinnati, OH 45202

**RE: Durrani Cases**

Dear Mr. Haggerty:

Our expert has reviewed your letter and attachments. Here is his response:

"2nd paragraph "Batch" they are saying EVERY claim/person is being lumped together and treated as one incident, not 400 incidents and you are limited to the occurrence limit but not the policy annual aggregate limits so if you have a $5,000,000 occurrence limit and a $10,000,000 aggregate limit you can only collect the $5,000,000. You should be able to collect the policy limit each policy period IF you separate the injured people into groups and assign some to each policy year. So we will batch a different group to each policy year to get all the occurrence limits.

Next in paragraph 2 he is saying if a claim is covered on the base policy it will be covered on the Excess policy, only after the base policy limit is exhausted.

Paragraph 3. D&O excludes bodily injury, is this where you claim negligent supervision or anything else to trigger the policy."

We have claims which fulfill all which he maintains.

So therefore, we reject your assertions in your letter.

Sincerely,

Matthew Hammer

Copy: Glenn Feagan
Joe Deters
Charlie Deters
Eric Deters

1



**Walter E. Haggerty**
Member
513.651.6879
513.651.6981 - fax
whaggerty@fbtlaw.com

December 16, 2015

Matthew J. Hammer, Esq.
5247 Madison Pike
Independence, Kentucky 41051

      *Re:*    *West Chester Hospital/Durrani Cases*

Dear Mr. Hammer:

     I received your email of December 10, 2015 and, upon receipt of it, discussed it with your co-counsel, Eric Kennedy. I advised him that if he needed something specific, I would be happy to provide it to him, but that we had already produced Mr. Schwallie for a deposition and had produced all policies. In light of the fact that you have "fired" him from your team, I have decided to provide you with certain information relative to the insurance coverage. Based on my past experience, nothing that I provide you is going to be acceptable to you and, therefore, no response is required to this letter.

     It is my understanding that you hired an "expert" to look at the coverage. If either he or you had reviewed the policies, you would easily be able to find the batch claim in Endorsement 7 on page 34 of Exhibit 12. This is the primary policy providing professional liability coverage to West Chester and UC Health. A copy of the batch clause is enclosed. All excess policies adopt and follow the language of the underlying primary policy. I am enclosing page 18 from the Healthcare Excess Liability Policy issued by UC Health Assurance Company that sets forth the provision that the limits of liability include "*all damages and expenses, costs and interest.*" This same provision can be found in each of the policies. I am not going to go through each policy and point out where these provisions can be located. I assume that you are just as capable as I am and that you have an "expert" who can do so.

     I am not going to go through each of the D & O policies and advise you where it excludes claims for bodily injury, but I am attaching page 4 to the Chartis policy. I assume that you and your expert are just as capable as I am of reading the policies.

Page Two
December 16, 2015

This is at least the third time I have explained this to you.  The second time was at the beginning of our mediation with Mr. Roscoe where I detailed the analysis of the insurance coverage.  We have provided the policies to every counsel involved in these cases and you are the only one who has disagreed (*as is your right*).

I would hope that we would be able to come to an agreement on this issue so as to be able to move forward with settlement.

Sincerely,

FROST BROWN TODD LLC

Walter E. Haggerty

WEH/mjd

Enclosures

CLAIMS MADE FORM

HEALTHCARE EXCESS LIABILITY POLICY

UC Health Assurance Company
TABLE OF CONTENTS

Page

DECLARATIONS PAGE................................................................................... 1

SECTION A:  CONCURRENT EXCESS LIABILITY

    PART ONE   -   INSURING AGREEMENTS................................................ 3
    PART TWO   -   CONDITIONS........................................................................ 4
    PART THREE  -   COMPANY'S LIMIT OF LIABILITY ................................. 5
    PART FOUR   -   EXCLUSIONS........................................................................ 5

    Schedule A .................................................................................................. 7

SECTION B:  SPECIFIED EXCESS LIABILITY

    PART ONE   -   INSURING AGREEMENTS................................................ 9
    PART TWO   -   CONDITIONS...................................................................... 14
    PART THREE  -   COMPANY'S LIMIT OF LIABILITY ................................ 18
    PART FOUR   -   EXCLUSIONS...................................................................... 21

    Schedule B ................................................................................................ 27

SECTION C:  COMMON CONDITIONS ................................................................ 29

SECTION D:  COMMON EXCLUSIONS................................................................ 33

SECTION E:  COMMON DEFINITIONS ............................................................... 35

SIGNATURE PAGE.............................................................................................. 43



AOBC
04/2003

The Company's obligation to indemnify the named insured applies only after the full amount(s) set forth in Schedule B, Schedule of Underlying Amount(s), have been paid. For the purpose of determining the manner in which the Company's Limit of Liability will apply, it is agreed that:

I.     With respect to SPECIFIED COVERAGE A., regardless of the number of insureds under this policy or of the number of claims made or suits brought, the Company's liability is limited as follows:

     A.  The total liability of the Company for all damages and expenses, costs and interest as set forth in Common Condition M., EXPENSES, COSTS AND INTEREST, because of all injury arising out of any one medical incident shall not exceed the Limit of Liability stated in Item 5.(a) of the Declarations Page as applicable to each loss event.

     B.  Subject to the above provision with respect to each loss event, the total liability of the Company for all damages and expenses, costs and interest as set forth in Common Condition M., EXPENSES, COSTS AND INTEREST, because of all injury to which this insurance applies shall not exceed the Limit of Liability stated in Item 5.(b) of the Declarations Page as aggregate.

II.    With respect to SPECIFIED COVERAGES B. and D., regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the Company's liability is limited as follows:

     A.  The total liability of the Company for all damages and expenses, costs and interest as set forth in Common Condition M., EXPENSES, COSTS AND INTEREST, because of bodily injury and property damage sustained by one or more persons or organizations as a result of any one occurrence shall not exceed the Limit of Liability stated in Item 5.(a) of the Declarations Page as applicable to each loss event.

     B.  Subject to the above provision with respect to each loss event, the total liability of the Company for all damages and expenses, costs and interest as set forth in Common Condition M., EXPENSES, COSTS AND INTEREST, because of all bodily injury and property damage which is described in any of the numbered subparagraphs below shall not exceed the Limit of Liability stated in Item 5.(b) of the Declarations Page as aggregate:

       1.  all property damage arising out of:

         a.  operations conducted by the insured away from the insured's premises;

         b.  rental of equipment to others;

         c.  liability assumed under any incidental contract relating to premises or operations, but excluding property damage included in subparagraph 2. below;

- 18 -

## ENDORSEMENT #7

### BATCH CLAUSE

This endorsement modifies such insurance as is afforded by PART I, PROFESSIONAL LIABILITY.

All claim(s) arising out of a Medical Incident together with all related Medical Incidents which constitute a Batch Claim shall be treated as one claim arising out of one Medical Incident for the purpose of determining the limits of the Company's liability set forth on the Declarations Page of this policy.

Prior to indemnification under this policy for a Batch Claim, the Company and Named Insured must agree to a Batch Claim that has been identified as such by the Named Insured and reported to the Company as such prior to the expiration or termination date of this policy, for which a claim is first made against the Insured(s) during the period this insurance is in force.

Any additional claim(s) arising out of the same Medical Incident together with all Related Medical Incidents that constitute the agreed-upon Batch Claim shall be included in that Batch Claim, and will at no time be considered a separate claim in this policy period or in any subsequent policies with the Company.

For the purpose of this endorsement the following additional definitions apply:

"Batch Claim" means a claim arising out of a Medical Incident together with all Related Medical Incidents involving two or more persons;

"Related Medical Incidents" means all Medical Incidents that result from the same, related, repeated, or continuous act(s) or omission(s) in the furnishing of Professional Services.

Nothing contained within this endorsement shall increase the aggregate limit of liability set forth on the Declarations Page of this policy.

UC Health Assurance Company
hereinafter called the "Company"
Governors Square, Building 4, 2nd Floor
23 Lime Tree Bay Avenue
PO Box 1051, KY1-1102
Grand Cayman, Cayman Islands
Telephone: (345) 914-5727



These DECLARATIONS and the attached
forms and Endorsements complete this .

## PROFESSIONAL/ COMMERCIAL GENERAL LIABILITY/ EMPLOYEE BENEFITS LIABILITY POLICY CLAIMS MADE FORM*

| Policy Number | Policy Period |
|---|---|
| 070112A | From July 1, 2012 to July 1, 2013 12:01 a.m. E.D.T. |

| Principal Named Insured | Address | Retroactive Date |
|---|---|---|
| UC Health | 3200 Burnet Ave. Cincinnati, OH 45202 | 7/1/2001 |

The insurance afforded is with respect to the following coverages as indicated below.

| Coverage | Advance Premium | Limit of Liability** |
|---|---|---|
| Part I – Professional Liability | $5,686,353 | Combined Single Limit $5,000,000 each claim $20,000,000 aggregate |
| and | | |
| Part II – Comprehensive General Liability (Non-Profit Subsidiaries Only) | | $5,000,000 each claim $20,000,000 aggregate |
| Comprehensive General Liability (For-Profit Subsidiaries Only) | | $1,000,000 each claim $2,000,000 aggregate |
| Contractual Liability | | $5,000,000 each claim $20,000,000 aggregate |
| Part III – Employee Benefits Liability | | $1,000,000 Aggregate Limit $1,000,000 Each Employee Limit |

\*    Coverage applies to claims that are made during this policy period arising out of covered incidents occurring on or subsequent to an Insured's Retroactive Date. Please review the policy carefully.



## Executive Liability Value Proposition

# *Why Choose Chartis for your Executive Liability Coverage needs?*

## UNDERWRITING EXPERTISE & MARKET DEDICATION

- Named the #1 provider of Directors & Officers insurance and Employment Practices Liability insurance [1]
- More than four decades of experience and commitment to the market, offering stable, high-limit capacity with a diverse appetite for risk
- Broad and innovative product offering, including unrivaled international capabilities via our Passport platform
- Ongoing pursuit of outstanding client service through continuous dialogue and client feedback response
- Over 350 dedicated underwriting professionals with an average of 10 years of industry experience
- A dedicated legal staff skilled in developing manuscript solutions tailored to client coverage needs
- Regional offices provide local underwriting presence and authority, delivering expertise and solutions across all lines of business
- Specialized underwriting and claims units focused on key segments, including Errors and Omissions, Financial Institutions, Fidelity and Private and Non-Profit
- Large geographic footprint that benefits companies doing business in multiple international jurisdictions
- Nearly 20,000 unique policyholders [2]

## SUPERIOR CLAIMS MANAGEMENT

- We have a claims staff of 300 who manage 30,000 new claims per year, averaging 2,250 new claims per month
- Our claims management team has an average of 15 years of industry experience for management
- Total payments made by Executive Liability on behalf of its insureds in 2009 totaled more than $1.9 billion
- Resolved claims exceeding $9 million in value have increased over 850 percent since 1996 [3]
- The top 25 claims paid by Executive Liability in 2009 totaled over $300 million

## CHARTIS FINANCIAL SNAP-SHOT

- Chartis U.S. Policyholder Surplus is $28 billion [4] (increased 58% from 12/31/05 to 12/31/09)
- In 2009, Chartis companies wrote in excess of $40 billion gross written premiums worldwide
- Chartis has ample resources to pay policyholder claims, paying $71 million in claims worldwide every business day in 2009
- Objective sources confirm our company's strong financial standing. From rating agencies to broker assessments, metrics in the insurance industry indicate that Chartis remains one of the most financially secure insurance organizations
- Our financial strength combined with our experience, global reach and broad range of product and service offerings, solve the insurance needs of 40 million clients worldwide

## STAYING POWER

Our consistent market leadership and commitment has lasted for more than four decades, while other carriers shift their focus and support from year-to-year. Our global underwriting capacity, philosophy and expertise-coupled with our local presence-enables Executive Liability to assess the most complex risks and respond rapidly when unforeseen events occur.

1 The Risk and Insurance Management Society 2009 Benchmark Survey http://www.rims.org/resources/BenchmarkSurvey/Pages/default.aspx.
2 Does not include Programs or Small Business accounts.
3 NERA Economic Consulting.
4 Year ended December 31, 2009.

Subject otherwise to the terms hereof, this policy shall cover **Loss** arising from any **Claims** made against (i) the estates, heirs or legal representatives of deceased **Individual Insureds**, and the legal representatives of **Individual Insureds** in the event of an **Individual Insured's** incompetency, insolvency or bankruptcy, who were **Individual Insureds** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; and (ii) the lawful spouse or **Domestic Partner** of an **Individual Insured** for all **Claims** arising solely out of his or her status as the spouse or **Domestic Partner** of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse or **Domestic Partner** or property transferred from the **Individual Insured** to the spouse or **Domestic Partner**; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse or **Domestic Partner**, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Individual Insured**, subject to the policy's terms, conditions and exclusions.

4. **EXCLUSIONS**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the gaining of any profit or advantage to which any final adjudication establishes the **Insured** was not legally entitled;

(b) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Act** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(c) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation; or the alleging of any **Wrongful Act** which is the same or a **Related Wrongful Act** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(d) alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly, **Bodily Injury** or **Property Damage**; provided, however, that with respect to the **FLI Coverage Section** only, this exclusion shall not apply to **Defense Costs** incurred in the defense of a **Claim** alleging a **Breach of Fiduciary Duty**;

(e) alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly:

(1) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or

(2) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**,

including, but not limited to, a **Claim** alleging damage to the **Organization** or its members;

(f) for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state or local statutory law or common law; provided, however, that:

(1) with respect to the **EPL Coverage Section** only, this exclusion shall not apply to (i) a **Claim** arising out of a violation of the Equal Pay Act, or (ii) **Loss** arising from a **Claim** for **Retaliation**; or

(2) with respect to the **FLI Coverage Section** only, this exclusion shall not apply to a **Claim** arising out of a violation of **Employee Benefit Law**;

(g) alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly, the refusal, failure or inability of any **Insured(s)** to pay wages or overtime pay for services rendered (hereinafter, "Earned Wages") (as opposed to tort-based back pay or front pay

94204 (3/07)                              4                    © All rights reserved.



## COMMON PLEAS COURT
## HAMILTON COUNTY, OHIO

Plaintiffs Listed In Exhibit A

A 1 6 0 0 1 1 0

_____

CASE NO. _____

**VS**

WRITTEN REQUEST FOR SERVICE
TYPE OF PAPERS TO BE SERVED ARE

West Chester Hospital, LLC, et al.

Complaint For Declaratory Judgment

_____

( ʙ) PLEASE CHECK IF THIS IS A
DOMESTIC CASE

**PLAINTIFF/DEFENDANT REQUESTS:**

EXPRESS MAIL SERVICE _____

CERTIFIED MAIL SERVICE  X_____

REGULAR MAIL SERVICE _____

PERSONAL SERVICE _____

RESIDENCE SERVICE _____

PROCESS SERVICE _____

FOREIGN SHERIFF _____

ON West Chester Hospital, LLC, Serve: GH&R Business Svcs., Inc.,

511 Walnut Street, 1900 Fifth Third Center Cincinnati, OH 45202

UC Health, Serve: GH&R Business Svcs., Inc., 511 Walnut Street,

1900 Fifth Third Center, Cincinnati, OH 45202

UC Health Assurance Company, Serve: David Schwallie 7700 University Drive

West Chester, Ohio 45069

UC Health Alliance Company, Serve: David Schwallie 7700 University Drive

West Chester, Ohio 45069

## Matthew J. Hammer

**ATTORNEY**

5247 Madison Pike Independence, KY 41051

**ADDRESS**

## 859-363-1900

**PHONE NUMBER**

92483

**ATTORNEY NUMBER**

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

REQUEST AND INSTRUCTIONS FOR ORDINARY MAIL SERVICE

### Plaintiffs Listed In Exhibit A

*Plaintiff*

INSTRUCTIONS TO THE CLERK

-vs-

CASE NUMBER: ___A 1 6 0 0 1 1 0___

### West Chester Hospital, LLC

Defendant

**IF SERVICE OF PROCESS BY CERTIFIED MAIL IS RETURNED BY THE POSTAL AUTHORITIES WITH AN ENDORSEMENT OF "REFUSED" OR "UNCLAIMED" AND IF THE CERTIFICATE OF MAILING CAN BE DEEMED COMPLETE NOT LESS THAN FIVE (5) DAYS BEFORE ANY SCHEDULED HEARING, THE UNDERSIGNED WAIVES NOTICE OF THE FAILURE OF SERVICE BY THE CLERK AND REQUESTS ORDINARY MAIL SERVICE IN ACCORDANCE WITH CIVIL RULE 4.6 (C) OR (D) AND CIVIL RULE 4.6 (E).**

### Matthew J. Hammer

**ATTORNEY OF RECORD**      (TYPE OR PRINT)

# \s\Matthew J. Hammer

**DATE**

**ATTORNEY'S SIGNATURE**

TRACY WINKLER
CLERK OF COURTS
HAMILTON COUNTY, OH
2016 JAN -7 A 10: 23
FILED